Good morning, Your Honors. Randall Scarlett on behalf of Appellant Dr. Godwin Maduka. We believe that the District Court erred in dismissing Dr. Maduka's 1981 claim pursuant to 12B6. In fact, we believe that the Second Amended Complaint adequately sets forth facts pursuant to law in this district for a 1981 violation. I note at the outset that it would appear that the District Court judge applied the appropriate standard, that is, recognizing that FRCP 9B, at least under a 1981 action, requires a plaintiff to allege facts that would support an inference of discrimination. So not just the Yamaguchi standard of pleading concisely, but notice pleading at any respect. However, the Court erred, and it erred in its interpretation of the facts set forth in the complaint, and specifically, turning to the record or the excerpt of record at 2A2. Before you get to that point? Yes. Are you taking the position that the judge was correct in his application of the law? I think he was correct in finding that there was no direct allegations of discrimination. I think he was incorrect. I'm not asking – I don't think I'm asking that question. I think I'm asking the question, did he have the law right that he applied? He applied the – He did not apply the unpronounceable v. Sorima case of the Supreme Court. He applied the incorrect standard to the facts of this case. The facts of this case are distinguishable from the law utilized. May I ask my question again? You may, Judge. I am not – I don't – I want you to answer my question instead of the one you're trying to get to. Did the district court have against – before him the Sorima case? Did any – either side cite it to him? No, they did not. Isn't that the law that's going to guide us in this case? Well, I believe that the law that will guide us in this case is London v. Coopers in Libron. I've read your brief. You didn't – neither side has cited a Supreme Court case that was decided in 2000, nearly two years ago, which seems to me that may well decide what law we're going to apply. And in that case, Justice Thomas, writing for a unanimous court, decided in a very similar issue that we would use the McDonnell test, which  is a very similar case. Now, it seems to me that's very significant. I take it that you're not familiar with that case. The Court is correct. I am not. And the district court wasn't familiar with it. I think you're good at pronouncing names. I think it's my job on this Court. I was going to defer to you on that one. That's why I called it unbeknownstable, because I didn't want to be corrected. Four – four-year information is cited at 534 U.S. 506, but I take it that you're not going to be able to help us with that issue. So you go ahead and help us with what you can. Well, I apologize, Your Honor, for not being able to address that issue specifically. However, I do wish to turn the Court's attention at least to the findings that were made by the district court judge, who I take it also was unfamiliar with the cases he did not cite it. Well, I understand. The problem is that I needed some help. It is a Title VII case and an age discrimination case, but it's close enough to a 1981. And with the broad language that they've set there, it seems to me the Supreme Court is pointing us towards the McDonald standard for all of these cases, which will make your job much easier, because what the plaintiff has to allege isn't nearly the high standard that Judge George set for you. But if counsel didn't cite the case to Judge George and counsel haven't cited it in their briefs, not familiar now, I don't think you're going to be able to help me with that issue. But go ahead. I concur, Your Honor, and I apologize to the Court. Turning to the excerpt of Record 202, the court, the district court states, this matter is somewhat unique, however, as Maduka concedes that a month immediately prior to his suspension, he incorrectly performed medical procedures on two different patients. And I think that's a misconception. That's a misreading of the gravamen of plaintiff's complaint. In essence, we are not conceding, nor have we ever conceded, an incorrect procedure. That would be analogous to the Fong decision, where you have an individual that commits a theft and admits that he commits a theft but contends that he was lost his job or was wrongfully terminated because of his race. That's not true in this instance. There's no evidence before this court that there was anything other than a known risk that resulted. In fact, esophageal intubation is a well-recognized risk of endotracheal intubation. So there's no admission here that Dr. Maduka somehow did something that fell below the standard of care or did something that was incorrect or did something other than what is a known risk to a medical procedure. And therefore, plaintiff's complaint points out these two instances not for support for why Dr. Maduka ended up losing his privileges, but rather for the argument as to why, the alleged argument as to why he lost his privileges, not the real reason. His allegations are clear that the real reasons were due to his race. And I think if you look at the Myers decision, for example, the Nevada Supreme Court decision, we're not talking about qualified immunity here, but rather what we're talking about is what minimal standards have to be afforded a doctor before that doctor loses his or her privileges. And those standards include, and clearly it was stated in the Myers decision, the right to confront witnesses, the right to cross-examine witnesses. And that was not done here at all. So I'm not raising the Myers case in the context of some qualified immunity to the defendant in this case. The Myers case is relevant because it shows specifically that Dr. Maduka was not able to cross-examine the two nurses who were never identified, who were the principal complainers of this alleged misconduct, which gave rise to the board's determination that he should lose his privileges. That is pattern and practice. That is the overall scheme that we feel fits within the conduct prohibited by 1981. And so the district court, with all due respect, and again brought this up when discussing the circumstantial element. At page 203 of the transcript, he states, As Maduka concedes in his complaint his privileges were suspended as a result of two medical procedures he performed incorrectly. That isn't what was alleged in the complaint. Rather, the complaint is critical of the process below, which resulted in the suspension of privileges because of the rights that were taken away from him that were not taken away from similarly situated non-African American individuals. I thought one of the patients died. Pardon me? I thought one of the patients died. One of the patients did die. That was the first patient. But he was neurologically stable the second day and died from non-anesthesia related cardiac problems. So it had nothing to do with the improper intubation the day before. I thought the book turned blue. He did. He was cyanotic. Yes. I don't know that that is something that we would. But both of them did. Both of them. That's what happens when you intubate. Did you present anything in your complaint that suggests that other doctors, white doctors who had two incidents like that were? Well, again, this is where you're asking two incidences. There were clearly a white doctor that had the same incident. In other words, the first surgery where there was improper intubation, he's revived, they abandon the surgery. A white doctor the very next day improperly intubated, and the same thing happened. It resulted in absolutely no complaint against him, no suspension of privileges, no peer review, no nothing. So, really, then we're looking at whether Judge George believed that we had to come up with an instance within a month apart of two non-African American doctors going through two incidents. And I just don't think that's the standard. This court itself has set forth if you can show in your case. But you showed somebody with two incidents? Yes. We showed not two incidents. We showed one incident with the first doctor, non-African American, same patient very next day. I'm not sure what same patient very next day means. The patient that died. The history is that Dr. Maduka is in surgery with him, improperly intubates him, gets the right intubation, but they forego the surgery. That same patient is taken back to ICU. It's found to be neurologically sound, and they go to perform the surgery again the next day. A white doctor intubates him the next day, has the same problem. It results in no complaint whatsoever. Could you refresh me on the status of discovery? This is dismissed in the pleadings now, but both of you get deeply, deeply into the facts. Have you done discovery at all? We haven't gotten to Rule 26, and I point out in the Myers decision there was a year's discovery on the propriety of the fairness hearing. We have done absolutely nothing. Anyway, my time is up, but, no, we have not. Okay. We'll hear from those five. May it please the Court, John Bailey appearing on behalf of the Apelli Sunrise Hospital and Medical Center. Hold on a second. What's the problem with the clock? Good morning. You asked the question whether or not the lower court judge, Judge George, applied the proper standard. The answer to that question is yes. This case raises an interesting question, and that question is, on a motion to dismiss, how far does a district court judge go in examining the allegations in a complaint for a discrimination claim? We know from the Sonora case, and I won't try to pronounce the first part of the case, but the Sonora case, the United States Supreme Court case, that there is no heightened standard in terms of pleading with respect to a discrimination claim. We also know that on a motion to dismiss, the district court is charged with the responsibility of challenging or testing the sufficiency of the allegations. Now, under Rule 8A2, the pleader has two obligations. The pleader has to identify the claim and has to identify that he is entitled to relief under that claim. So the question becomes, if Dr. Maduka says, I had a relationship with Sunrise Hospital, my privileges were suspended, there were similarly situated physicians who got different treatment, I'm African-American, they're not, therefore, I am entitled to a claim for discrimination under 42 U.S.C. 1981, is that enough to survive a motion to dismiss? The difference between that simple plain language in three or four sentences and what Dr. Maduka did in this case is twofold. The first distinction is, as Judge George noted in his opinion, Dr. Maduka set forth that as a result of two incidents, and I refer you to page 202 on the Record of Appeal, and this is directly out of their allegation, paragraph 15. Is it in the excerpt? It is, Your Honor. What's the excerpt? What's the excerpt citation? The excerpt citation, it's 202, line 7 through 11. Page 202? Correct. Okay. And I'm reading from Judge George's order, and then I will go to page 172 from the excerpt of Record, line 15, which is paragraph, I'm sorry, line 6, which is paragraph 15 of the second amended complaint. Judge George recognizes when he says, this matter is somewhat unique, however. As Maduka concedes that in the month immediately prior to his suspension, he incorrectly performed medical procedures on two different patients, resulting in complications. Then Judge George says, he further alleges that his suspension was as a result of these incidents. Now, when you turn to the second amended complaint and you look at their allegation in paragraph 15, that's excerpt of Record 172, page 172, Dr. Maduka alleges, quote, as a result of the two incidents, on or about June 4th, 1999, Defendant Sunrise Hospital and Medical Center Fair Hearing Committee imposed a summary suspension upon Dr. Goodwin Maduka, suspending his privileges as a practicing physician at Defendant Sunrise Hospital. The lower court did as it was charged to do, which is to accept this allegation as being true and How do you square that with the allegation immediately preceding that, though? It basically said the defendant has disciplined him because of his race rather than confidence. And that's what leads me to my second point that distinguishes this case from just plainly saying I've been discriminated against. What Dr. Maduka did in his second amended complaint was he said, listen, there are other doctors who are non-African American that are similarly situated as I, but who got differing treatment. What you see Judge George doing is saying, wait a minute, you've alleged that there are similarly situated doctors who got different treatment. But Judge George analyzes the allegations made by Dr. Maduka and says, based on your own allegations, these doctors are not similarly situated. They may have gotten different treatment, but they're not similarly situated. Can you draw an inference from that that there was some kind of racial animus? And the answer is you can't. So while the second amended complaint states a claim, we know that it's a discrimination claim. When you get to the second prong, which is you have to identify the relief that you're entitled to under that claim, the lower court says, wait a minute, based on your own allegations, you are not providing me with any inference upon which you would be entitled, Dr. Maduka, to relief under a discrimination claim. And what Judge George says is, and I can refer you to the exact language, he says you've identified two doctors who had one incident each of a similar nature, but you allege in your complaint that you were not suspended for one incident. You say in paragraph 15 it was because of the two incidents that the hospital suspended your privileges. Are you telling us that he just alleged too much? He should have said I've been discriminated against. And because he alleged more, then his complaint must be dismissed with prejudice. That's an interesting question that I thought of myself. And the answer to your question is perhaps. Well, we can't perhaps up here, unfortunately, because we don't get to perhaps. Why wouldn't we just treat those allegations as surpluses and go right to the issue after all, we're not asking for perfection under McDonnell Douglas. We're only asking for a plain statement. And I agree. If the judge disagrees with that, then he can put it in his order and let him amend it to say it. But that wasn't done here. I agree that we're talking about a Rule 8a2 pleading standard, which is plain and simple language.  You identify the relief that you're entitled to under the claim. However, the lower court on a motion to dismiss is not charged with the responsibility of saying I will look at some of the allegations, but I will disregard other allegations. So when I say perhaps to your question. But if there's a claim stated that has just got some parts in the mixed unclaimed, we don't allow him to enter a dismissal with prejudice of the complaint. We make it without prejudice so they can amend. I take it from what you're saying that you have you have read the unpronounceable v. Sorima? Yes, I have, Your Honor. Did you cite it to the district judge? I did not cite it to the district judge because there were. The district judge didn't have the benefit of what the law is at that time, according to the Supreme Court, or maybe. Maybe you can help me then if you've read the case. Do you do you believe that we should use that case in this 1981 case, even though it was a Title VII Civil Rights Act case? That's an interesting question. I think when you look at the language that Justice Thomas uses, while he says this case deals with employment discrimination and how the standards should be set on a motion to I think by application you can say that that language is sweeping and very broad. I think this case is very consistent with how Judge George viewed his obligation under Rule 8A2. That's the second level of your argument. My first question is, should we apply Sorima to this case? And I think the answer to that is either yes or no. Yes. Okay. By the way, have you read that, just stumbled across it recently? I've read the case some time ago. When I read, and I think your question might be. After you filed your brief? Yes. We have a process here where you can, a recent case you think will assist the Court, you can file a letter indicating that. We have those rules so that we're aware that you, we can be made aware of the most recent cases. If, in fact, we do apply this and we haven't made that decision, then we go to McDonald and there's a very much looser standard than what I sense Judge George has applied in this case. He seems to be looking for more. Where in Judge George's opinion can we conclude that had he had Sorima cited to him by counsel, he would have come out the same way? Two answers to that. First of all, the second amended complaint was filed after the Sorima case. So all of this happens after the U.S. Supreme Court case. And I don't think there's any indication that Judge George would not have known about the U.S. Supreme Court case. He doesn't cite it. But I'm not sure there's an obligation to cite it because he is not, there's no indication from his opinion that he is applying some heightened standard. The McDonald-Douglas case that the Sorima case refers to and the heightened standard, there's no indication from his opinion that he is applying some kind of heightened standard. Show me in his opinion where you come to that conclusion that he's not applying a heightened standard. Well, I come to the conclusion when I read. Just show me in the opinion. I will refer you to excerpt of record, page 202. And I will concede to you that he doesn't say I'm applying the heightened standard or I'm not applying the heightened standard. Line what on page 202? But if you look at line 7, I think what you see is Judge George saying that this is a different case than most cases. And he tells you why it's different. In discrimination cases, I believe it is largely the case that the plaintiff comes before the court and says, I was minding my own business and all of a sudden I got terminated. Judge George says this is a different case because the plaintiff here is saying there were two predicate acts, two predicate incidents, which preceded this discipline. And he's saying that's why this case is different. He then goes and looks at the four corners of the second amended complaint, and he tests the sufficiency of the allegations and concludes you may have cited a claim, but you haven't told us how you're entitled to relief under that claim. So when you read the language, Judge George isn't applying a heightened standard. He's saying, Plaintiff, you came to me with some allegations. I'm giving truth to those allegations, but there is no inference that I can draw from those allegations that racial animus versus anything else was the basis upon which I can let you go forward under a discrimination claim under section 42 U.S.C. 1981. I see my time has expired. Let me ask you one question about the complaint before you sit down. It appears to me that the complaint itself, the second amended complaint, does not reference specifically the other instances. It just says that other similarly situated non-African American physicians received different treatment. And it appears to me that what happened is that Judge George asked at the hearing, what do you mean, and the plaintiff's counsel recited this one incident, and he said, well, that's not enough. Is that what happened here? The way I read the complaint, and I can just point you to page 171 on the excerpt. Right. If you look at line 12, you see that the plaintiff has pled that Dr. Parker had, who was the person who was monitoring him on the second patient. Right. Is one of those physicians who could be charged with having a similar issue. Right. No, I understand that. But then it goes on to say, just in a conclusory fashion, that he received different treatment than non-African American doctors generally. I couldn't draw. I didn't take the Parker allegation on page 5 to be exclusive from just a reading of the complaint. My question to you is, I guess, I think you've answered the first part, which is that's all we have in the complaint. The second part is, it appeared to me what happened then is that Judge George, at the hearing, elicited from plaintiff's counsel, what do you mean? He said there's only one instance. He said, well, there are two for your doctor, therefore they're not similarly situated and you're out of court, based on evidence that he heard at the hearing rather than in the four corners of the complaint. Is that what happened? No, it is not what happened. Well, how did he arrive at the conclusion that you've talked about today, that every other case involved only one instance? He derived it from looking at the four corners of the Second Amendment complaint. There was no hearing on the motion to dismiss. He looked at the four corners, I've looked at the four corners, and I've reached the same conclusion that the plaintiff was referring to two different physicians, because he talks about Dr. Parker and he talks about another physician, who had a similar incident. But then he goes on and says, I've had two incidents, and it's the two incidents that triggered the discipline. So, in summary, on a de novo review, you will look at this same Second Amendment complaint, and I think you can reach the same conclusion that the lower court did and be completely consistent with what the United States Supreme Court said, as being you don't apply a heightened standard in the Sonora case. So I guess it gets back to Judge Wallace's question. In your view, that if he had just alleged, left out paragraphs 4B and 4C, and just said he received different treatment, he'd be okay? And my response to that, and I'm not trying to be coy or dodge the question, is perhaps he would have been, by pleading more and being more specific. But, again, it's his complaint. This is the third time doing that. I understand your argument. This is what we have to deal with. I understand. I'm just saying your answer would be different if he had omitted reference at all to those specific incidents. I'm not sure my answer would be different. I think it comes back to my initial question when I stood up here ten minutes ago, which is this case poses a unique question for this court, and it is how far does the lower court go in challenging the sufficiency of allegations? Do you want the lower court to say, you know, I see in paragraph 5, 12, and 19 that there's enough under 8A2, because I see a claim and I see that he's saying similarly situated, treated differently. Or do you want the lower court to look at every allegation treated as true and then derive a decision or result based on that? I think you're charged in a motion to dismiss to look at the four corners of the document. I don't think you get to say, I'll accept some allegations, but because the other ones really take me further and make me understand that he doesn't have a racial discrimination case, that I can just disregard them. I'm not sure you want to go that far. I understand your answer. While we're looking at the complaint, we might also look at paragraph 16, page 172, which raises a separate claim of discriminatory treatment in the procedure employed at the hearing he was given. And here he says less, unlike the claims where he gives examples of other doctors who were treated differently, which you've been talking about, which is Thomas, here he is vague. It's exactly the opposite problem. He claims that he was treated badly, that he was not given due process. And then he says in his last sentence, Dr. Maduka, as an African-American, received different treatment than non-African-American doctors. And I must say, I haven't read every word of the complaint, but I think there are no specifics here. So what do we do with this? Well, I think we look at it the way the lower court looked at it. And I'll point you to page 205 on the excerpt of record, line 24 through 26, where the lower court said, while Maduka alleges some facts regarding his hearing. So 204. I'm sorry, 205, line 24. Let me just grab it. I'm there. Okay. Where the lower court says, while Maduka alleges some facts regarding his hearing, he fails to allege any facts regarding the manner in which a medical peer review for a non-African-American doctor was conducted. So, again, the lower court is chipped. I'm sorry. Why doesn't that fail under the Supreme Court case? Yeah. Well, I mean, it appears to me, and maybe you can correct, but it appears to me that statement indicates that the district court was applying a heightened standard of care. That's not a McDonald's standard there. I can see how one might reach that conclusion. But at the same time, I think what you're dealing with is you're dealing with a lower court who is looking at the entire record. And when you're challenging the sufficiency of the allegations on a motion to dismiss, I think the court has to look at all of the allegations and take them as true and draw whatever inferences. Now, that allegation about the hearing. But you accepted it, sir. You just said you didn't plead enough facts to support this. I'm sorry? I mean, obviously it states a claim. The district court said, but you didn't plead enough facts, so I don't know. Well. And doesn't Soyercoff or Sirica basically say, well, the remedy in that case is a motion for a more definite statement? And I understand that, and that language is clearly in Sonoma. But I think what you have is a lower court saying I've looked at all of the allegations and I'm challenging the sufficiency of them, which is what I'm required to do in a motion to dismiss. And he's saying here. Unfortunately, he didn't do it, didn't have the opportunity of doing it with a Supreme Court case that was then in existence. I understand you can come to that conclusion, but I also would ask you to appreciate. I'm not saying what conclusion I'm coming to. I'm stating a fact. And I'm just wondering, as Judge Thomas said, whether if he was applying McDonnell-Douglas to page 205, would you find out whether he would do it the same way? Judge George is a very smart judge. And that's why I say the Sonora case preceded the filing of the Second Amendment complaint, the filing of the motion to dismiss. There is no indication that Judge George somehow didn't understand the appropriate standard to be applied. And I agree with you. He's a very smart individual. When I say he's a smart judge, I don't say he's omnipotent. Most of us who sit as trial judges appreciate the assistance of counsel giving us the law that we need. And had he done so, I'm not sure that he would have said what he said here applying the case. But who knows? Okay. Thank you. Maybe we'll give him a chance. Thank you. I don't remember if we really had time left on the clock. I guess the case is filed. You will stand submitted. We'll next hear argument in Carroll v. Ashcroft. Thank you.
judges: Wallace, Kozinski, Thomas